EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
EVAN J. DAVIS (Cal. Bar No. 250484)
BYRON J. MCLAIN (Cal. Bar No. 257191)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4850/0637
    Facsimile: (213) 894-6269
    E-mail:    evan.davis@usdoj.gov
              byron.mclain@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>RODRIGO LOZANO,<br><br>        Defendant. | No. CR 13-675-PSG<br><br><u>GOVERNMENT'S TRIAL MEMORANDUM</u><br><br>Trial Date:  June 28, 2016<br>Trial Time:  8:30 a.m.<br>Location:    Courtroom of the<br>             Hon. Philip S.<br>             Gutierrez |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Evan J. Davis and Byron J. Mclain, hereby submits its trial memorandum in the above-captioned case.

    The government reserves the right to submit supplemental trial memoranda as appropriate before, or during, the trial.

Dated: June 16, 2016            Respectfully submitted,

                                EILEEN M. DECKER
                                United States Attorney

                                LAWRENCE S. MIDDLETON
                                Assistant United States Attorney
                                Chief, Criminal Division


                                _____/s/ Byron J. McLain_____
                                EVAN J. DAVIS
                                BYRON J. MCLAIN
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES...................................................iii

TRIAL MEMORANDUM...........................................................1

I.     STATUS OF THE CASE..................................................1

       A.    Trial Schedule...............................................1

       B.    Length of Trial..............................................1

       C.    Pre-Trial Status of Defendant................................1

       D.    Jury Trial...................................................1

       E.    Spanish Language Translator..................................1

       F.    Witnesses....................................................1

II.    STATEMENT OF THE CHARGE AGAINST DEFENDANT..........................2

III.   STATEMENT OF FACTS.................................................2

       A.    Summary......................................................2

       B.    Lozano Authorized to Apply for Tax identification
             Number for Undocumented Workers..............................3

       C.    Commencement of IRS Criminal Investigation...................4

       D.    Traffic Stop and Seizure of Lozano-Related Returns...........5

       E.    Statements from Lozano's Tax Return Employees................6

       F.    Monetary Benefit from Fraudulent Tax Returns.................6

IV.    ELEMENTS OF THE OFFENSE AND PERTINENT LAW..........................7

       A.    Basic Elements...............................................7

       B.    "Claim"......................................................7

       C.    "False, Fictitious, or Fraudulent"...........................8

       D.    "Knowledge"..................................................8

       E.    Possible Good Faith Defense..................................9

V.     LEGAL AND EVIDENTIARY ISSUES......................................10

       A.    Exhibits....................................................10

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                                      PAGE

    B.   Charts and Summaries...................................11

        1.   Summary Charts...................................11

        2.   Summary Witnesses................................13

    C.   Authentication and Foundation..........................14

        1.   Fed. R. Evid. 901...............................14

        2.   Written and Electronic Communications...........15

        3.   Business Records................................16

            a.   Foundational Requirements...................16

            b.   "Qualified Witness"........................16

            c.   Circumstances of Preparation...............17

            d.   Authentication by Declaration..............18

        4.   Certified Public Records........................18

        5.   Duplicates......................................19

    D.   Defendant's Statements.................................19

    E.   Cross-Examination......................................21

    F.   Character Evidence.....................................22

    G.   Pecuniary Gain........................................23

VI.   RECIPROCAL DISCOVERY......................................24

VII.  CONCLUSION...............................................25

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**FEDERAL CASES:**

Barsky v. United States,
    339 F.2d 180 (9th Cir. 1964) .............................. 12

Bourjaily v. United States,
    483 U.S. 171 (1987) ....................................... 16

Crawford v. Washington,
    541 U.S. 36 (2004) ........................................ 18

Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co.,
    466 F.2d 722 (7th Cir. 1972) .............................. 13

Gallego v. United States,
    276 F.2d 914 (9th Cir. 1960) .............................. 14

Kawashima v. Mukasey,
    530 F.3d 1111 (9th Cir. 2008) ............................. 7

La Porta v. United States,
    300 F.2d 878 (9th Cir. 1962) .............................. 16

Li v. Ashcroft,
    389 F.3d 892 (9th Cir. 2004) .............................. 7

Lorraine v. Markel Am. Ins. Co.,
    241 F.R.D. 534 (D. Md. 2007) .............................. 15

Michelson v. United States,
    335 U.S. 469 (1948) ................................... 22, 23

Tamarin v. Adam Caterers,
    13 F.3d 51 (2d Cir. 1993) ................................. 12

Territory Guam v. Ojeda,
    758 F.2d 403 (9th Cir. 1985) .............................. 19

United States v. Aceves-Rosales,
    832 F.2d 1155 (9th Cir. 1987) ............................. 24

United States v. Basey,
    613 F.2d 198 (9th Cir. 1979) .............................. 18

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985) ........................ 14, 21

United States v. Bland,
    961 F.2d 123 (9th Cir. 1992) .............................. 16

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

**FEDERAL CASES:**

United States v. Blecker,
    657 F.2d 629 (4th Cir. 1981) ................................. 8

United States v. Booth,
    309 F.3d 566 (9th Cir. 2002) ................................ 24

United States v. Burreson,
    643 F.2d 1344 (9th Cir. 1981) ............................... 19

United States v. Caswell,
    825 F.2d 1228 (8th Cir. 1987) ............................... 12

United States v. Catabran,
    836 F.2d 453 (9th Cir. 1988) ................................ 18

United States v. Childs,
    5 F.3d 1328 (9th Cir. 1993) ................................. 17

United States v. Chu Kong Yin,
    935 F.2d 990 (9th Cir. 1991) ................................ 14

United States v. Coachman,
    727 F.2d 1293 (D.C. Cir. 1984) ............................... 7

United States v. Collicott,
    92 F.3d 973 (9th Cir. 1996) ................................. 20

United States v. Cuozzo,
    962 F.2d 945 (9th Cir. 1992) ................................ 21

United States v. De Peri,
    778 F.2d 963 (3d Cir. 1985) ................................. 13

United States v. Dedman,
    527 F.3d 577 (6th Cir. 2008) ................................. 7

United States v. Franco,
    874 F.2d 1136 (7th Cir. 1989) ............................... 17

United States v. Gardner,
    611 F.2d 770 (9th Cir. 1980) ............................. 12, 13

United States v. Gay,
    967 F.2d 322 (9th Cir. 1992) ................................ 22

United States v. Gieger,
    190 F.3d 661 (5th Cir. 1999) ................................ 8

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

**FEDERAL CASES:**

United States v. Gravenmeir,
    121 F.3d 526 (9th Cir. 1997) ................................. 8

United States v. Hagege,
    437 F.3d 943 (9th Cir. 2006) ................................ 18

United States v. Hathaway,
    798 F.2d 902 (6th Cir. 1986) ................................ 17

United States v. Hearst,
    563 F.2d 1331 (9th Cir. 1977) ............................... 22

United States v. Heredia,
    483 F.3d 913 (9th Cir. 2007) ................................. 9

United States v. Huber,
    772 F.2d 585 (9th Cir. 1985) ................................ 18

United States v. Jackson,
    845 F.2d 880 (9th Cir. 1988) ................................. 7

United States v. Johnson,
    594 F.2d 1253 (9th Cir. 1979) ............................... 11

United States v. Leahy,
    82 F.3d 624 (5th Cir. 1996) ................................. 7

United States v. Lemire,
    720 F.2d 1327 (D.C. Cir. 1983) ............................. 13

United States v. Lorenzo,
    995 F.2d 1448 (9th Cir. 1993) ............................... 10

United States v. Marin,
    669 F.2d 73 (2d Cir. 1982) ................................. 20

United States v. McCollom,
    664 F.2d 56 (5th Cir. 1981) ................................. 23

United States v. Meyers,
    847 F.2d 1408 (9th Cir. 1988) ............................... 11

United States v. Miller,
    771 F.2d 1219 (9th Cir. 1985) ............................... 18

United States v. Milton,
    602 F.2d 231 (9th Cir. 1979) ................................. 8

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

**FEDERAL CASES:**

United States v. Miranda-Uriarte,
    649 F.2d 1345 (9th Cir. 1981) ............................... 21

United States v. Mitchell,
    502 F.3d 931 (9th Cir. 2007) ............................... 20

United States v. Moore,
    208 F.3d 577 (7th Cir. 2000) ............................... 25

United States v. Ortega,
    203 F.3d 675 (9th Cir. 2000) ............................ 20, 21

United States v. Radseck,
    718 F.2d 233 (7th Cir. 1983) ............................... 12

United States v. Ray,
    930 F.2d 1368 (9th Cir. 1990) ............................ 17, 18

United States v. Rubino,
    431 F.2d 284 (6th Cir. 1970) ............................... 13

United States v. Saniti,
    604 F.2d 603 (9th Cir. 1979) ............................... 24

United States v. Scholl,
    166 F.3d 964 (9th Cir. 1999) ............................... 24

United States v. Shirley,
    884 F.2d 1130 (9th Cir. 1989) ............................. 13

United States v. Siddiqui,
    235 F.3d 1318 (11th Cir. 2000) ............................ 15

United States v. Silverman,
    449 F.2d 1341 (2d Cir. 1971) ............................... 12

United States v. Skillman,
    922 F.2d 1370 (9th Cir. 1990) ............................. 19

United States v. Smith,
    609 F.2d 1294 (9th Cir. 1979) ............................. 18

United States v. Smith,
    893 F.2d 1573 (9th Cir. 1990) ............................. 15

United States v. Soulard,
    730 F.2d 1292 (9th Cir. 1984) ............................. 13

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

**FEDERAL CASES:**

<u>United States v. Taylor</u>,
    716 F.2d 701 (9th Cir. 1983) ............................... 14

<u>United States v. Trevino</u>,
    419 F.3d 896 (9th Cir. 2005) ............................... 10

<u>United States v. Warren</u>,
    25 F.3d 890 (9th Cir. 1994) ............................... 19

<u>United States v. Willis</u>,
    759 F.2d 1486 (11th Cir. 1985) ............................ 20

**FEDERAL STATUTES:**

18 U.S.C. § 286 ..................................... 2, 7, 8

18 U.S.C. § 287 .......................................... 8

**FEDERAL RULES:**

Fed. R. Crim. P. 16(b)(1)(A)............................... 24

Fed. R. Crim. P. 16(b)(1)(C)............................... 24

Fed. R. Crim. P. 16(c)..................................... 24

Fed. R. Crim. P. 16(d)(2)(C)............................... 24

Fed. R. Crim. P. 16(d)(2)(D)............................... 24

Fed. R. Evid. 104(a) ...................................... 16

Fed. R. Evid. 106 ......................................... 20

Fed. R. Evid. 401 ......................................... 15

Fed. R. Evid. 404(b) ...................................... 22

Fed. R. Evid. 405(a) ...................................... 23

Fed. R. Evid. 608(b) ...................................... 22

Fed. R. Evid. 611(a) .................................. 12, 13

Fed. R. Evid. 611(b) ...................................... 21

Fed. R. Evid. 801 ......................................... 15

Fed. R. Evid. 801(d)(2) ................................... 20

Fed. R. Evid. 801(d)(2)(A) ................................ 19

Fed. R. Evid. 801(d)(2)(B) ................................ 20

Fed. R. Evid. 803 ......................................... 15

Fed. R. Evid. 803(6) .............................. 16, 17, 18

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

**FEDERAL RULES:**

Fed. R. Evid. 803(8) ............................................... 19

Fed. R. Evid. 804 ................................................. 15

Fed. R. Evid. 807 ................................................. 15

Fed. R. Evid. 901 ................................................. 14

Fed. R. Evid. 901(a) ........................................... 14, 15

Fed. R. Evid. 901(b)(1) ........................................... 15

Fed. R. Evid. 901(b)(4) ........................................... 15

Fed. R. Evid. 902(1) .............................................. 19

Fed. R. Evid. 902(4) .............................................. 19

Fed. R. Evid. 902(11) ............................................. 18

Fed. R. Evid. 1003 ............................................. 15, 19

Fed. R. Evid. 1006 ............................................. 11, 12

Fed. R. Evid. 1101(d)(1) .......................................... 16

**TRIAL MEMORANDUM**

**I.   STATUS OF THE CASE**

    **A.   Trial Schedule**

The jury trial against defendant Rodrigo Lozano ("Lozano" or "defendant") is set for June 28, 2016, at 8:30 a.m.  The parties understand that the district court will not be in session on Friday, July 1, 2016 thru and including Tuesday, July 5, 2016 and that the district court will resume the trial on Wednesday, July 6, 2016.

    **B.   Length of Trial**

The estimated time for the presentation of the government's case-in-chief is approximately three days.  This time estimate includes the defendant's approximation that his cross examination of the governments' witnesses will last no longer than approximately 2 hours.

    **C.   Pre-Trial Status of Defendant**

Defendant is on bond pending trial.

    **D.   Jury Trial**

Jury trial has not been waived.

    **E.   Spanish Language Translator**

The services of a Spanish-language translator will be necessary for some of the witnesses.  The government is arranging for a translator for its Spanish-speaking witnesses.

    **F.   Witnesses**

At this time, the government expects to call approximately 12 fact witnesses in its case-in-chief.  The names and roles of the 12 fact witnesses in the government's case-in-chief are:

    1.   Alfaro, Miguel (Bank of America employee)

    2.   Bello, Balbina (former Lozano employee at Ayuda)

3.   Cruz, Mirna (IRS employee)

4.   Escobar, Cristina (former Lozano employee at Ayuda)

5.   Escobar, Yuriana (former Lozano employee at Ayuda)

6.   Garcia, Manuela (former Lozano employee at Ayuda)

7.   Garcia-Clemente, Salustia (former Lozano employee at Ayuda)

8.   Lau, Jennifer (IRS special agent)

9.   Prado, Grizelda (former Lozano employee at Ayuda)

10.  Reyes, Karla (Bank of America employee)

11.  Salcedo, Juan (Riverside Sheriff's Department officer)

12.  Velez, Athena (IRS employee)

The government will update this list, as necessary, in advance of trial.  The government may call additional witnesses in rebuttal, depending on whether defendant calls any witnesses and on what testimony they give.  The government will separately file these witnesses' statements in camera as required by the district court's trial order.

**II.  STATEMENT OF THE CHARGE AGAINST DEFENDANT**

The defendant is charged in the indictment with one count of violating 18 U.S.C. § 286 (conspiracy to defraud the United States with respect to claims).

**III.  STATEMENT OF FACTS**

The government expects that the evidence at trial will establish the following facts:

**A.   Summary**

Lozano owned and operated an income tax preparation business named Lozano & Associates – Ayuda ("Ayuda") where he hired, trained, and supervised primarily young, Hispanic females in their late teens or early 20's to prepare clients' federal income tax returns using

2

computers and tax-preparation software supplied by defendant. Defendant was the only individual associated with Ayuda who was authorized by the IRS to file returns (either by mail or electronically using his IRS-issued "Electronic Filing Identification Number" ("EFIN")) on behalf of Ayuda customers under his "Preparer Tax Identification Number" ("PTIN").[1]

Defendant, together with a co-conspirator identified as Manriquez (also known as Juan Rangel and Santos Campos Barrera) and others, prepared and filed more than 10,000 fraudulent income tax returns that claimed refunds on behalf of purported taxpayers under an IRS refund program designed to assist lower-income taxpayers with children.  While defendant's role was to use his staff to prepare the returns for submission to the IRS, and to then collect the refunds, co-conspirator Manriquez and others were responsible for preparing bogus supporting foreign citizenship and similar documents (e.g., Mexican "matricula" or consular identification cards) that were essential to obtaining initial IRS approval to enable the purported non-citizen taxpayers to file returns.

### B. Lozano Authorized to Apply for Tax identification Number for Undocumented Workers

The Social Security Administration only issues Social Security numbers to lawful U.S. residents but the IRS requires all residents, lawful or otherwise, to file tax returns and pay taxes.  Thus, the IRS issues Individual Tax Identification Numbers ("ITIN") to undocumented residents working in the United States in order to collect income taxes where applicable.

---

[1] Return preparers apply for a PTIN so as to use the PTIN in lieu of their social security number on returns they prepare.

3

There are two ways to obtain an ITIN, both using IRS Form W-7. Under the first method, the applicant can execute and submit the form to the IRS.  The form must be accompanied by bona fide, original identification, such as a passport, national identification card, foreign driver's license, or the like.  The second method (which was used in this case) permits IRS-authorized individuals other than the applicant to review and verify the authenticity of the required documentation pertaining to the applicant and to then complete and execute the Form W-7.  The individual that conducts the document review is called a "Certifying Acceptance Agent" ("CAA") in IRS parlance.  Pursuant to a CAA agreement, the CAA is required to actually interview the applicant and to inspect required documentation.  Unlike the first option that requires that the applicant provide original identification documentation to the IRS in connection with the Form W-7, a Form W-7 that is based on a CAA's review does not have to be submitted to the IRS together with the applicant's supporting identification documentation.

A person becomes a CAA solely pursuant to written contract with the IRS.  The CAA contract spells out how the CAA must conduct the document review, including that the CAA must interview the applicant and examine original supporting identification documents.  Lozano was at all relevant times the only authorized CAA for the bogus tax returns that are linked to the conspiracy in this case.

**C.  Commencement of IRS Criminal Investigation**

Athena Velez ("Velez"), an analyst with the IRS's "Scheme Development Center" that is charged with analyzing data to detect fraudulent tax schemes, made a criminal referral to the IRS's Criminal Investigations division in or about December 2011.  Velez's

4

referral came after her determination that over 13,000 federal income tax returns that contained common indicia of fraud in seeking refunds under the Additional Child Tax Credit ("ACTC") program had been submitted for refund payments through defendant's personal, IRS-issued PTIN.[2]   Some of those returns also had been electronically filed under defendant's personal, IRS-issued EFIN.

These returns bore several (if not all) of the same common characteristics.   As examples, (i) the returns contained Lozano's signature at the very bottom of the returns; (ii) multiple returns for the same taxpayer were simultaneously filed for the present (either 2011 or 2012) and earlier tax years; (iii) many of the returns identified the defendant's residential or business address as the taxpayer's residence address; (iv) the alleged taxpayers' claimed annual wages ranged approximately from $25,000 to $35,000; (v) the Form W-2s filed with the returns stated that the alleged taxpayers were employed by one of ten or so large (and real) agricultural companies in Central and Southern California, but none of the companies had submitted a parallel Form W-2 for any of the alleged taxpayers; and (vi) dozens of the returns directed the IRS to electronically deposit the refunds into a Bank of America account held by Lozano or one of his employees.

D.   **Traffic Stop and Seizure of Lozano-Related Returns**

During the course of the conspiracy, a Riverside County Sheriff's deputy conducted a fortuitous traffic stop of a car owned by Manriquez.   Manriquez's car contained dozens of phony

---

[2] The ACTC is similar to the Earned Income Credit ("EIC"), except that undocumented workers could qualify for the ACTC, but not the EIC.

identification documents and bogus tax returns that were consistent
with returns filed by Lozano.  All of the purported taxpayers had
Hispanic names, all the returns contained ITINs, and all the returns
bore the name, address, and telephone number of Lozano's Ayuda
business as the tax preparer.

### E.   Statements from Lozano's Tax Return Employees

In June 2012, federal search warrants were served on two of
Ayuda's locations and agents interviewed several of Lozano's tax
return preparation employees.  These employees' testimony is expected
to include that (i) Lozano exclusively owned and operated Ayuda;
(ii) Lozano was the only person authorized to sign returns on behalf
of the business; (iii) Manriquez was a frequent Ayuda customer and
personally met with Lozano; (iv) Lozano approved the use of
Manriquez's supporting documentation for the tax returns even though
the employees repeatedly raised questions about the authenticity of
the documentation; (v) Manriquez came to Ayuda and picked up cash
proceeds of tax refunds from the returns; (vi) Lozano obtained fees
for the preparation of each return; and (vii) thousands of notices
from the IRS were ignored.

In addition, Cristina Escobar ("Escobar") is expected to testify
that she opened a Bank of America personal checking account ending in
8792 and that the defendant used this account so he could receive tax
refunds on behalf of Lozano's tax return preparation service clients.
Escobar will testify that even though the refunds were deposited into
her account, Lozano made clear that the refunds were "his money."

### F.   Monetary Benefit from Fraudulent Tax Returns

The tax returns from the conspiracy covered calendar tax years
2011 and 2012 and collectively claimed over $61,000,000 in refunds.

The IRS paid claims totaling approximately $30,000,000 in refunds. Lozano received at least $1,000,000 in fees from the fraudulent tax returns.

## IV.   ELEMENTS OF THE OFFENSE AND PERTINENT LAW

### A.   Basic Elements

To prove a violation of 18 U.S.C. § 286, the government must prove the following elements: (1) beginning on a date unknown, and continuing through on or about June 2012, the defendant entered into a conspiracy to obtain payment or to aid in obtaining payment of one or more claims against an agency of the United States, specifically the Internal Revenue Service; (2) the claims were false, fictitious, or fraudulent; and (3) the defendant knew at the time that the claims were false, fictitious, or fraudulent.  18 U.S.C. § 286; United States v. Leahy, 82 F.3d 624, 633 (5th Cir. 1996).  The government is not required to prove any overt act in furtherance of the conspiracy. 18 U.S.C. § 286; Leahy, 82 F.3d at 633; United States v. Dedman, 527 F.3d 577, 593-94 (6th Cir. 2008).

### B.   "Claim"

A "claim" means a demand for money or transfer of public property or an attempt to cause the government to pay out sums of money, including a claim for a tax refund.  Li v. Ashcroft, 389 F.3d 892 at 896, n.9 (9th Cir. 2004) (citing United States v. Jackson, 845 F.2d 880, 883 (9th Cir. 1988) and implied overruling on other grounds by Kawashima v. Mukasey, 530 F.3d 1111 (9th Cir. 2008)).  The government need not prove that the claim was honored or paid by the government.  Li, 389 F.3d at 896, n.9 (citing United States v. Coachman, 727 F.2d 1293, 1302 (D.C. Cir. 1984)).

1       C.   **"False, Fictitious, or Fraudulent"**

2       Title 18 United States Code Section 286, similar to 18 U.S.C.

3 § 287, lists the terms "false, fictitious, or fraudulent" in the

4 disjunctive, and the former two words are defined differently than

5 the latter. A statement is "false or fictitious" if untrue when

6 made, and then known to be untrue by the person making it or causing

7 it to be made. United States v. Milton, 602 F.2d 231, 233 (9th Cir.

8 1979). This does not require an effort to deceive the government.

9 Id. For example, an individual who recruits others to file false

10 returns based on fictitious reports of wages and withholding (Forms

11 W-2) may be guilty under Section 286 even if he recruited taxpayers

12 who were legally entitled to refunds. United States v. Gieger, 190

13 F.3d 661, 666-67 (5th Cir. 1999). See also United States v. Blecker,

14 657 F.2d 629, 634-35 (4th Cir. 1981) (defendant guilty of violation

15 of § 287 when he knowingly submitted claim forms with inaccurate

16 information, even if government obtained adequate value for payment).

17 Likewise, a tax return may be false or fictitious under the statute

18 if the facts and figures used on the return are fictitious even

19 though the taxpayer might be entitled to a refund if a true return

20 were filed.

21       A statement or representation is fraudulent if known to be

22 untrue, and made or caused to be made with the intent to deceive the

23 Government agency to whom submitted. Milton, 602 F.2d at 233.

24       D.   **"Knowledge"**

25       An act is done "knowingly" if the defendant is aware of the act

26 and does not act through ignorance, mistake, or accident. United

27 States v. Gravenmeir, 121 F.3d 526, 529 (9th Cir. 1997); Ninth

28 Circuit Model Criminal Jury Instructions, No. 5.6 (2010 ed.). The

government is not required to prove that the defendant knew that his acts were unlawful.  Model Instruction 5.6.  In deciding whether a person acted knowingly, the jury may consider evidence of his words, acts, or omissions, along with all the other evidence.  Id.

The government has proposed the Ninth Circuit willful blindness instruction, but defendant asserts the instruction is not warranted. A defendant is also deemed to "know" a particular fact if he (1) was aware of a high probability of that fact and (2) deliberately avoided learning the truth.  Model Instruction 5.7.  Thus, if a person takes "deliberate actions to avoid confirming suspicions of criminality," he is deemed to exhibit "willful blindness" or "deliberate ignorance," and treated equally to one who has actual knowledge of wrongful conduct.  United States v. Heredia, 483 F.3d 913, 918 (9th Cir. 2007) (en banc).

For a crime requiring knowledge, actual knowledge and willful blindness are alternative theories of mens rea.  Heredia, 483 F.3d at 922. Although the theories are inconsistent, the government may seek instruction on both.  Id.  The district court must consider each of the requested instructions separately and "determine if the evidence could support a verdict on either ground."  Id.  "In deciding whether to give a willful blindness instruction, in addition to an actual knowledge instruction, the district court must determine whether the jury could rationally find willful blindness even though it has rejected the government's evidence of actual knowledge.  If so, the court may also give a Jewell instruction."  Id.

**E.   Possible Good Faith Defense**

Defendant will likely argue that he acted out of a good faith belief that the tax returns filed in the scheme were accurate.

Defendant is entitled to make such an argument.  But defendant is not entitled to a jury instruction on good faith.  As the Ninth Circuit held in United States v. Lorenzo, 995 F.2d 1448 (9th Cir. 1993), when a defendant is charged with offenses outside of Title 26 tax crimes, the district court need not instruct on good faith, and may simply leave the issue for argument by the parties.  Id. at 1455; see also United States v. Trevino, 419 F.3d 896, 901 (9th Cir. 2005) (in tax evasion case, no error in declining to instruct on good faith defense when instruction adequately covered contested knowledge element of offense).  Indeed, Lorenzo concerned a Form 1099-based tax refund fraud scheme somewhat similar to that at issue here, and the defendant in that case (as here) was charged with various offenses under Title 18 (e.g., theft of public money, false statements and mail fraud).  Id.

## V.  LEGAL AND EVIDENTIARY ISSUES

At trial, the government intends to introduce into evidence, among other things, testimony from percipient witnesses (i.e., Ayuda former employees and Bank of America employees), law enforcement agents, and summary witnesses, as well as documents and potential stipulations.

### A.  Exhibits

The parties have reached stipulations concerning the admissibility of various exhibits.  On June 16, 2016, the parties filed a Stipulation Regarding Trial Exhibits, which stipulated to the foundation, admissibility, and authenticity of government trial exhibits 1-2, 7, 10, 13-15, 17, 19-20, 22, 24-25, 27, 35, and 45-50. The parties will notify the court if any additional stipulations are agreed upon prior to trial.

**B.   Charts and Summaries**

Certain portions of the present case involve a large number of documents, in particular, tax returns and other tax-related documents received and/or filed by defendant's company (Ayuda) and Bank of America account statements for defendant, defendant's brother (Adrian Lozano), and former Ayuda employee Cristina Escobar.  To assist in the jury's understanding of the case, the government intends to present and introduce as exhibits charts and summaries of those materials, to save time at trial and to avoid the need to present the voluminous records themselves.

Fed. R. Evid. 1006 provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.  The originals, or duplicates, shall be made available for examination or copying, or both, by the parties at a reasonable time and place.  The court may order that they be produced in court.

In this case, all of the underlying records have been copied, produced, and/or made available to defendant in discovery.

   1.   Summary Charts

A chart or summary may be admitted as evidence where the underlying documents are voluminous, admissible, and available for inspection.  See United States v. Meyers, 847 F.2d 1408, 1411-12 (9th Cir. 1988); United States v. Johnson, 594 F.2d 1253, 1255-57 (9th Cir. 1979).  While the underlying documents must be admissible, they need not be admitted.  See Meyers, 847 F.2d at 1412; Johnson, 594 F.2d at 1257 n.6.  Summary charts need not contain the defendant's version of the evidence and may be given to the jury while a government witness testifies concerning them.  See United States v.

1    *Radseck*, 718 F.2d 233, 239 (7th Cir. 1983); <u>Barsky v. United States</u>,

2    339 F.2d 180, 181 (9th Cir. 1964).

3        Summary exhibits, such as those the government wishes to

4    introduce into evidence, are admissible under Fed. R. Evid. 611(a)

5    and have long been recognized as an appropriate means of clarifying a

6    complicated or document-intensive case for the jury.  See <u>United</u>

7    <u>States v. Silverman</u>, 449 F.2d 1341, 1346 (2d Cir. 1971).  Fed. R.

8    Evid. 611(a) permits a court to "exercise reasonable control over the

9    mode and order of interrogating witnesses and presenting evidence so

10   as to (1) make the interrogation and presentation effective for

11   ascertainment of the truth, (2) avoid needless consumption of time,

12   and (3) protect witnesses from harassment or undue embarrassment."

13   See <u>United States v. Gardner</u>, 611 F.2d 770, 776 (9th Cir. 1980).

14       Hence, under Federal Rules of Evidence 1006 and 611(a), courts

15   routinely admit into evidence summary charts that organize other

16   evidence and aid the jury's understanding, as long as the underlying

17   evidence is admissible, has been made available to the adverse party,

18   and a witness with knowledge of the preparation of the chart or

19   summary is available for cross-examination.  See <u>Gardner</u>, 611 F.2d at

20   776; <u>Tamarin v. Adam Caterers</u>, Inc., 13 F.3d 51, 53 (2d Cir. 1993);

21   <u>United States v. Caswell</u>, 825 F.2d 1228, 1235-36 (8th Cir. 1987).

22       The summary exhibits the government intends to present satisfy

23   all of the foregoing requirements.  The pertinent evidence, involving

24   tax documents, bank account transactions and related evidence, is

25   admissible.  The summarized evidence has been provided to the

26   defense.  The summary witnesses will be available for cross-

27   examination.  Moreover, the summary exhibits will serve to organize

28   and clarify the government's presentation and assist the jury's

understanding of the case.  The use and admission of summary exhibits at trial is thus appropriate.  Fed. R. Evid. 611(a); <u>Gardner</u>, 611 F.2d at 776.

Summary charts also may be used by the government in opening statement.  Indeed, "such charts are often employed in complex conspiracy cases to provide the jury with an outline of what the government will attempt to prove."  <u>United States v. De Peri</u>, 778 F.2d 963, 979 (3d Cir. 1985) (approving government's use of chart); <u>United States v. Rubino</u>, 431 F.2d 284, 290 (6th Cir. 1970) (same).

### 2.   Summary Witnesses

The three IRS witnesses will provide summary testimony.  A summary witness may properly testify about, and use a chart to summarize, evidence that has already been admitted.  The court and jury are entitled to have a witness "organize and evaluate evidence which is factually complex and fragmentally revealed."  <u>United States v. Shirley</u>, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (DEA agent's testimony regarding her review of various telephone records, rental receipts, and other previously offered testimony held to be proper summary evidence, as it helped jury organize and evaluate evidence; summary charts properly admitted); <u>United States v. Lemire</u>, 720 F.2d 1327, 1348 (D.C. Cir. 1983).

A summary witness may rely on the analysis of others where the summary witness has sufficient experience to judge another person's work and incorporate as his or her own the fact of its expertise.  The use of other persons in the preparation of summary evidence goes to its weight, not its admissibility.  <u>See</u> <u>United States v. Soulard</u>, 730 F.2d 1292, 1299 (9th Cir. 1984); <u>Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.</u>, 466 F.2d 722, 727 (7th Cir. 1972)

13

1  ("It is not necessary . . . that every person who assisted in the

2  preparation of the original records or the summaries be brought to

3  the witness stand.").

4      **C.   Authentication and Foundation**

5          1.   <u>Fed. R. Evid. 901</u>

6      Federal Rule of Evidence 901(a) provides that "[t]he requirement

7  of authentication or identification as a condition precedent to

8  admissibility is satisfied by evidence sufficient to support a

9  finding that the matter in question is what its proponent claims."

10  Fed. R. Evid. 901(a).  Under Rule 901(a), evidence should be

11  admitted, despite any challenge, once the government makes a <u>prima</u>

12  <u>facie</u> showing of authenticity or identification so "that a reasonable

13  juror could find in favor of authenticity or identification . . .

14  [because] the probative force of the evidence offered is, ultimately,

15  an issue for the jury." <u>United States v. Chu Kong Yin</u>, 935 F.2d 990,

16  996 (9th Cir. 1991) (citations and internal quotation marks omitted);

17  <u>see also</u> <u>United States v. Black</u>, 767 F.2d 1334, 1342 (9th Cir. 1985).

18  Once the government meets this burden, "[t]he credibility or

19  probative force of the evidence offered is, ultimately, an issue for

20  the jury." <u>Black</u>, 767 F.2d at 1342.

21      The government need not establish all links in the chain of

22  custody of an item or call all persons who were in a position to come

23  into contact with it. <u>See</u> <u>Gallego</u>, 276 F.2d at 917.  Alleged gaps in

24  the chain of custody go to the weight of the evidence rather than to

25  its admissibility. <u>See</u> <u>United States v. Taylor</u>, 716 F.2d 701, 711

26  (9th Cir. 1983).  A duplicate is admissible to the same extent as the

27  original, unless there is a genuine question as to the authenticity

28  of the original or it would be unfair under the circumstances to

1   admit the duplicate in lieu of the original.  <u>See</u> Fed. R. Evid. 1003;

2   <u>United States v. Smith</u>, 893 F.2d 1573, 1579 (9th Cir. 1990).

3                  2.   <u>Written and Electronic Communications</u>

4        The parties have stipulated to the foundation, authenticity, and

5   admission of certain letters, facsimiles, and emails, specifically

6   letters, facsimiles, and emails concerning communications between

7   defendant, IRS representatives, and/or others.  These communications

8   are represented in Exhibits 13, 49, and 50, among potentially others.

9   As with other types of communication, without a stipulation by the

10  parties (which is not this case), the admissibility of letters,

11  facsimiles, and emails is governed by a collection of evidentiary

12  rules.  <u>Lorraine v. Markel Am. Ins. Co.</u>, 241 F.R.D. 534, 538 (D. Md.

13  2007) (listing rules).  Each letter, facsimile, or email must be

14  relevant and authentic.  Fed. R. Evid. 401 and 901(a).  If a letter,

15  facsimile, or email is hearsay, then it must be covered by an

16  applicable exception (<u>e.g.</u>, past recollection recorded).  <u>See</u> Fed. R.

17  Evid. 801, 803, 804, and 807.

18       To authenticate a letter, facsimile, or email message, the

19  proponent must produce "evidence sufficient to support a finding that

20  the matter in question is what its proponent claims."  Fed. R. Evid.

21  901(a); <u>see also</u> <u>Lorraine</u>, 241 F.R.D. at 538 ("can the proponent show

22  that the [email] is what it purports to be").  Without a stipulation

23  by the parties, this can be accomplished by testimony of a witness

24  with knowledge, and/or by distinctive characteristics in the letter,

25  facsimile, or email.  Fed. R. Evid. 901(b)(1) and 901(b)(4); <u>see</u>

26  <u>United States v. Siddiqui</u>, 235 F.3d 1318, 1322-23 (11th Cir. 2000)

27  (authentication of email by testimony that message bore defendant's

28  email address; described defendant's conduct in intimate detail;

                                      15

referred to author using defendant's nickname; and was followed by telephone call from defendant regarding content of email).

### 3.   Business Records

#### a.   *Foundational Requirements*

The parties have stipulated to foundation, authenticity, and admission of certain business records (<u>i.e.</u>, records of regularly kept activities), such as bank statements reflecting defendant's and others' financial transactions.  These business records are represented in Exhibits 20, 22, 24, 25, 27, and 35 among potentially others.  For business records to be admissible without a stipulation (not this case), the following foundational facts must be established through the custodian of the records or another qualified witness: (1) the records must have been made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records must have been made and kept in the course of a regularly conducted business activity. Fed. R. Evid. 803(6); <u>United States v. Bland</u>, 961 F.2d 123, 126-28 (9th Cir. 1992).  In determining whether these foundational facts are established, the court may consider hearsay and other evidence not admissible at trial.  <u>See</u> Federal Rules of Evidence 104(a) & 1101(d)(1); <u>Bourjaily v. United States</u>, 483 U.S. 171, 178-79 (1987).

Challenges to the accuracy or completeness of business records ordinarily go to the weight of the evidence and not its admissibility.  <u>See, e.g.</u>, <u>La Porta v. United States</u>, 300 F.2d 878, 880 (9th Cir. 1962).

#### b.   *"Qualified Witness"*

Even without a stipulation by the parties of certain business records, the phrase "other qualified witness" is broadly interpreted

16

to require only that the witness understand the recordkeeping system. United States v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993); United States v. Ray, 930 F.2d 1368, 1370-71 (9th Cir. 1990) (welfare fraud investigator may testify about contents of defendant's welfare file where investigator was familiar with filing and reporting requirements and forms used, even though she did not record information and was not custodian); United States v. Franco, 874 F.2d 1136, 1139 (7th Cir. 1989) ("The witness 'need only be someone with knowledge of the procedure governing the creation and maintenance of the type of records sought to be admitted.'").

A qualified witness need not be employed by, or related to, the entity to whom the records belong; a federal agent or an independent witness may be a qualified witness for records seized from a company. See Franco, 874 F.2d at 1139-40 (narcotics agent qualified to testify about record-keeping practices of a money-exchange for purposes of Rule 803(6)); United States v. Hathaway, 798 F.2d 902, 905-07 (6th Cir. 1986) (FBI agent could provide foundation testimony for admission of company records under Rule 803(6) as "there is no reason why a proper foundation for application of Rule 803(6) cannot be laid, in part or in whole, by the testimony of a government agent or other person outside the organization whose records are sought to be admitted. . . . [A]ll that is required is that the witness be familiar with the record keeping system.").

        c.    *Circumstances of Preparation*

Even without a stipulation by the parties of certain business records, the government need not establish precisely when or by whom the document was prepared; all the rule requires is that the document be made "at or near the time" of the act or event it purports to

17

1    record. See United States v. Huber, 772 F.2d 585, 591 (9th Cir.

2    1985); United States v. Basey, 613 F.2d 198, 201 n.1 (9th Cir. 1979).

3    "There is no requirement that the government establish when and by

4    whom the documents were prepared."  See Ray, 930 F.2d at 1370; Huber,

5    772 F.2d at 591 ("[T]here is no requirement that the government show

6    precisely when the [record] was compiled").

7         Rule 803(6) does not require that the business rely on the

8    document in a specific way; the rule merely requires that the record

9    be "kept in the course of regularly conducted business activity."

10   See United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988)

11   (citing United States v. Miller, 771 F.2d 1219, 1237 (9th Cir. 1985);

12   United States v. Smith, 609 F.2d 1294, 1301 (9th Cir. 1979)).

13                    *d.   Authentication by Declaration*

14        Even without a stipulation by the parties of certain business

15   records, certified domestic records of regularly conducted activity

16   are self-authenticating when accompanied by a written declaration

17   establishing that (1) the records must have been made at or near the

18   time by, or from information transmitted by, a person with knowledge;

19   and (2) the records must have been made and kept in the course of a

20   regularly conducted business activity.  Fed. R. Evid. 902(11).

21   Custodian of records declarations may be utilized by the court to

22   provide a foundation for the admission in evidence of business

23   records without creating any confrontation issue under Crawford v.

24   Washington, 541 U.S. 36 (2004).  See United States v. Hagege, 437

25   F.3d 943, 957 (9th Cir. 2006).

26             4.   Certified Public Records

27        The parties have stipulated to the foundation, authenticity, and

28   admission of official IRS public records, such as employment

18

verification forms and IRS agreements, among others.  These official IRS records are represented in Exhibits 13, 14, 15, 17, 45, 46, 47, 48, and 49, among potentially others.  Even without a stipulation, certain public records in the form of domestic public documents under seal, or certified copies of public records, which do not require extrinsic evidence of authenticity as a condition precedent to admissibility are admissible.  Fed. R. Evid. 902(1) and 902(4).  Such records are self-authenticating, Fed. R. Evid. 902(4), and not hearsay, Fed. R. Evid. 803(8).

### 5.  Duplicates

A duplicate is admissible to the same extent as an original unless (1) there is a genuine question as to the authenticity of the original or, (2) in the circumstances, use of the duplicate would be unfair.  Fed. R. Evid. 1003.  Even a photocopy bearing extraneous handwriting not connected to the defendant is admissible.  United States v. Skillman, 922 F.2d 1370, 1375 (9th Cir. 1990).

### D.  Defendant's Statements

The government intends to offer prior statements made by defendant to former Ayuda employees and Bank of America employees. Under the Federal Rules of Evidence, defendant's statements are admissible as a party admission if offered against him.  Fed. R. Evid. 801(d)(2)(A); see also United States v. Warren, 25 F.3d 890, 895 (9th Cir. 1994); Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985) (explaining that a statement need not be incriminating to be an admission).  Furthermore, a statement is not hearsay if the statement is offered against a party and is the party's own statement in either an individual or representative capacity.  Fed. R. Evid. 801(d)(2)(A); United States v. Burreson, 643

F.2d 1344, 1349 (9th Cir. 1981).  Additionally, statements that are adopted by a party opponent are non-hearsay.  Fed. R. Evid. 801(d)(2)(B).

However, a defendant may not elicit his own prior statements from a witness, because they are hearsay when offered by him.  Fed. R. Evid. 801(d)(2); United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000); United States v. Willis, 759 F.2d 1486, 1501 (11th Cir. 1985) (defendant's exculpatory statements inadmissible when offered by defense).  By eliciting some of defendant's prior statements, the government does not thereby open the door to the defendant to put in other out-of-court statements.

The only potential limitation on this principle is the "doctrine of completeness," Fed. R. Evid. 106, which has been applied by some courts to require that all of a particular prior statement by defendant be admitted where necessary to explain the admitted portion of the statement, to place it in context, or to avoid misleading the jury.  United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).  "The completeness doctrine does not, however, require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages."  Marin, 669 F.2d at 84.  The "doctrine of completeness," also does not apply to conversations that are not written or recorded.  Fed. R. Evid. 106 (Advisory Committee Notes); see United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996); see also United States v. Mitchell, 502 F.3d 931, 965 n.9 (9th Cir. 2007) ("[The Defendant's] argument that exclusion of his exculpatory statements violated Fed. R. Evid. 106 is . . . foreclosed by Ortega, where we rejected a similar argument.  Rule 106 applies only to written and recorded statements, not unrecorded oral confessions, and

1   Rule 106 does not render admissible otherwise inadmissible hearsay.")
2   (citing <u>Ortega</u>, 203 F.3d at 682).  Here, all of defendant's
3   statements that the government plans to introduce were not written or
4   recorded.

5   **E.   Cross-Examination**

6       The scope of a cross-examination is within the discretion of the
7   trial court.  Fed R. Evid. 611(b).  It should be limited to the
8   subject matter of the direct examination and matters affecting the
9   credibility of the witness.  The trial court may, in the exercise of
10  its discretion, permit inquiry into additional matters as if on
11  direct examination.  Fed. R. Evid. 611(b).

12      On June 6, 2016, defense counsel represented to the court that
13  the defendant in this case would testify on his own behalf.  A
14  defendant who testifies at trial may be cross-examined as to all
15  matters reasonably related to the issues he puts in dispute during
16  cross-examination.  <u>United States v. Miranda-Uriarte</u>, 649 F.2d 1345,
17  1353-54 (9th Cir. 1981).  A defendant has no right to avoid cross-
18  examination on matters which call into question his claim of
19  innocence.  <u>Id.</u>  Moreover, a defendant who testifies at trial waives
20  his Fifth Amendment privilege and may be cross-examined on matters
21  made relevant by his direct testimony.  <u>United States v. Black</u>, 767
22  F.2d 1334, 1341 (9th Cir. 1985).

23      The scope of defendant's waiver is coextensive with the scope of
24  relevant cross-examination.  <u>United States v. Cuozzo</u>, 962 F.2d 945,
25  948 (9th Cir. 1992); <u>Black</u>, 767 F.2d 1334, 1341 (9th Cir. 1985).  The
26  extent of the waiver is determined by whether the question reasonably
27  relates to subjects covered by defendant's direct testimony.  <u>United</u>

28

States v. Hearst, 563 F.2d 1331, 1340 (9th Cir. 1977).  Federal Rule

of Evidence 608(b) provides that:

> [E]xtrinsic evidence is not admissible to prove specific
> instances of a witness's conduct in order to attack or support
> the witness's character for truthfulness.  But the court may, on
> cross-examination, allow them to be inquired into if they are
> probative of the character for truthfulness or untruthfulness of
> (1) the witness; or (2) another witness whose character the
> witness being cross-examined has testified about.

The defendant's credibility will be crucial if he chooses to

testify.  Accordingly, cross-examination of the defendant about other

fraudulent conduct in which he may have engaged is necessary for the

jury to weigh whether his denial of knowledge and fraudulent conduct

is credible given any other actions.  As the Ninth Circuit has held,

Rule 608(b) "specifically contemplates inquiries into prior behavior

in order to challenge a witness's credibility.  Evidence of prior

frauds is considered probative of the witness's character for

truthfulness or untruthfulness."  United States v. Gay, 967 F.2d 322,

328 (9th Cir. 1992).  Additionally, Fed. R. Evid. 404(b) does not

proscribe the use of other act evidence as an impeachment tool during

cross-examination.  Id.

**F.   Character Evidence**

Defendant may intend to call character witnesses to testify on

his behalf.  The Supreme Court has recognized that character evidence

– particularly cumulative character evidence – has weak probative

value and great potential to confuse the issues and prejudice the

jury.  See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).

The Court has thus given trial courts wide discretion to limit the

presentation of character evidence.  Id.

22

In addition, the form of the proffered evidence must be proper. Federal Rule of Evidence 405(a) sets forth the sole methods for which character evidence may be introduced.  It specifically states that where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation and (2) by testimony as to opinion.  Character witnesses called by the defendant may not testify about specific acts demonstrating a particular trait or other information acquired only by personal observation and interaction with the defendant; the witness must be limited to summarizing the reputation of the defendant as known in the community.  See Michelson, 335 U.S. at 477.  Thus, defendant may not introduce specific instances of his good conduct through the testimony of others.  Id. ("The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental or moral traits.").

On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue. See Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests.  See Michelson, 335 U.S. at 482-83.  The only prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to the character trait at issue.  See United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

## G.   Pecuniary Gain

The government intends to show that defendant made money during the course of the fraudulent conspiracy, which is admissible to show

23

1    his participation in the fraud.  See United States v. Saniti, 604

2    F.2d 603, 604 (9th Cir. 1979).  The receipt and use of money derived

3    from the conspiracy is also circumstantial evidence of fraud.  See

4    United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002).

5    **VI.  RECIPROCAL DISCOVERY**

6         Rule 16 of the Federal Rules of Criminal Procedure creates

7    certain reciprocal discovery obligations on the part of defendants to

8    produce three categories of materials that he or she intends to

9    introduce as evidence at trial: (1) documents and tangible objects;

10   (2) reports of any examinations or tests; and (3) expert witness

11   disclosure.  Rule 16 imposes on defendants a continuing duty to

12   disclose these categories of materials.  Fed. R. Crim. P.

13   16(b)(1)(A), (b)(1)(C), and (c).  In those circumstances where a

14   party fails to produce discovery as required by Rule 16, the rule

15   empowers the district court to "prohibit the party from introducing

16   evidence not disclosed, or it may enter such other order as it deems

17   just under the circumstances."  Fed. R. Crim. P. 16(d)(2)(C) and (D).

18        The Ninth Circuit has held that where a defendant fails to

19   produce reciprocal discovery or fails to provide timely notice of his

20   or her intention to call an expert witness, it is well within the

21   district court's discretion to exclude such defense evidence,

22   especially where the defense disclosure was made after the start of

23   trial.  See United States v. Scholl, 166 F.3d 964, 972 (9th Cir.

24   1999) (upholding district court's decision to exclude defense

25   evidence due to defendant's strategic decision to withhold discovery

26   until the last minute); United States v. Aceves-Rosales, 832 F.2d

27   1155, 1156-57 (9th Cir. 1987) (holding that district court did not

28   abuse its discretion in precluding medical report that the defense

                                      24

1   wished to introduce in case-in-chief but which it disclosed for the

2   first time after the government had rested); United States v. Moore,

3   208 F.3d 577, 578 (7th Cir. 2000) ("courts are entitled to exclude

4   evidence that should have been produced during reciprocal discovery

5   in criminal cases").

6          As of the filing of this brief, the government has received

7   seven exhibits constituting reciprocal discovery from the defendant.

8   The parties have stipulated to the admissibility of these seven

9   exhibits.  Defense counsel has informed the government that the

10  defendant will not be calling an expert witness or making any

11  affirmative defenses.

12  **VII. CONCLUSION**

13         The government respectfully requests permission to file

14  additional trial memoranda if necessary.

15  Dated: June 16, 2016          Respectfully submitted,

16                                EILEEN M. DECKER
                                  United States Attorney

17
                                  LAWRENCE S. MIDDLETON
18                                Assistant United States Attorney
                                  Chief, Criminal Division
19

20                                    /s/ Byron J. McLain
                                  _____
21                                EVAN J. DAVIS
                                  BYRON J. MCLAIN
22                                Assistant United States Attorneys

23                                Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

24

25

26

27

28

                                    25